## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA PENSACOLA DIVISION

**RAFIE A. LEE,**

> **Petitioner,**

**v.**                                    **Case No.  3:16cv97-MCR/CAS**

**JULIE L. JONES, Secretary,**
**Department of Corrections,**

> **Respondent.**
_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On March 3, 2016, by the mailbox rule, Petitioner, Rafie A. Lee, a prisoner in the custody of the Florida Department of Corrections, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF No. 1.  An amended petition was ordered and was thereafter filed on May 10, 2016.  ECF No. 10.  Respondent filed an answer with exhibits on February 3, 2017.  ECF No. 20.  Petitioner filed a reply on February 23, 2017, ECF No. 23, and a memorandum of law in support of the petition on April 24.  ECF No. 26.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration

of all the issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this case. *See* Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts. For the reasons set forth herein, the pleadings and attachments before the Court show that Petitioner is not entitled to federal habeas relief and this amended § 2254 petition should be denied.

## Background and Procedural History

On May 7, 2012, Petitioner was charged in Escambia County, Florida, with the following April 7, 2012, offenses: Count 1, actually and intentionally touching or striking, or intentionally causing bodily harm to, a pregnant person, Brittni Lashey Freeman, in violation of section 784.045(1)(b), Florida Statutes (2011); and Count 2, battery upon Hope Elaine Cattell in violation of section 784.03, Florida Statutes. Ex. A at 1.[1]

Jury trial was held on December 3 and 6, 2012, at which Petitioner was found guilty as charged. Ex. A at 63. Petitioner was adjudicated guilty and sentenced as a prison releasee reoffender pursuant to section 775.082(9), Florida Statutes, to 180 months in prison on Count 1, with credit for 215 days previously served. Ex. A at 69-70. He was sentenced

---

[1] Hereinafter, citations to the state court record, "Ex. –," refer to exhibits A through I submitted in conjunction with Respondent's answer. *See* ECF No. 20.

to time served on Count 2.  Ex. A at 69.  Petitioner appealed to the state

First District Court of Appeal, which affirmed per curiam without opinion on

December 3, 2013.[2]  Ex. I, D.  Mandate was issued December 19, 2013.

Ex. D.  *See* <u>Lee v. State</u>, 127 So. 3d 506 (Fla. 1st DCA 2013) (table).

Petitioner filed a motion for post-conviction relief pursuant to Florida

Rule of Criminal Procedure 3.850 on August 27, 2014, Ex. E at 1-63, and

an amended motion for post-conviction relief on September 30, 2014.  Ex.

E at 67-88.  The post-conviction court denied the amended motion in an

order entered on April 8, 2015, without a hearing.  Ex. E at 91-96.

Petitioner appealed denial of relief and the state First District Court of

Appeal affirmed per curiam without opinion on September 3, 2015.  Ex. F.

The mandate was issued on September 29, 2015.  Ex. F.  *See* <u>Lee v.</u>

<u>State</u>, 173 So. 3d 890 (Fla. 1st DCA 2015) (table).

Petitioner filed his amended petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254 in this Court raising the following grounds for

relief:

> **Ground One:**  Trial counsel rendered ineffective assistance by
> (1) erroneously advising Petitioner not to testify; (2) failing to
> move to strike Juror D.C. for bias in favor of law enforcement;
> (3) filing a motion in limine re inculpatory evidence; (4) failing to

---

[2] The issue raised on direct appeal was that the trial court erred in precluding
impeachment of a state witness showing bias, rendering his testimony corroborating
one of the alleged victims unreliable.  Ex. I at 7.

object to the State's violation of the motion in limine; (5) failing to properly cross-examine the alleged victims with police report, statements, deposition, and trial testimony; (6) failing to object to the State's witness Herman Strickland's improper and prejudicial statement; (7) failing to conduct an adequate pretrial investigation and failing to interview and call witnesses; (8) failing to investigate and call an "on scene" witness to testify; (9) failing to move for a judgment of acquittal; and (10) failing to object to an incomplete jury instruction. ECF No. 10 at 5, 15.

**Ground Two:** Petitioner was denied due process and a fair trial by the trial judge's failure to remove a juror who expressed bias in favor of law enforcement and who stated that if Petitioner did not testify it would have an impact on her deliberation, along with three other jurors. ECF No. 10 at 6.

**Ground Three:** Petitioner was denied due process when the prosecutor knowingly allowed the State's key witness to give perjured testimony. ECF No. 10 at 8.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody only under certain specified circumstances. Section 2254(d) provides in pertinent part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the
Supreme Court of the United States; or

(2) resulted in a decision that was based on an
unreasonable determination of the facts in light of
the evidence presented in the State court
proceeding.

28 U.S.C. § 2254(d).  *See also* Cullen v. Pinholster, 563 U.S. 170, 181

(2011); Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011).

"Under the 'contrary to' clause, a federal habeas court may grant the

writ if the state court arrives at a conclusion opposite to that reached by this

Court on a question of law or if the state court decides a case differently

than this Court has on a set of materially indistinguishable facts."  Williams

v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring).  "Under

the 'unreasonable application' clause, a federal habeas court may grant the

writ if the state court identifies the correct governing legal principle from this

Court's decisions but unreasonably applies that principle to the facts of the

prisoner's case."  *Id.* at 413 (O'Connor, J., concurring).

The Supreme Court has explained that "even a strong case for relief

does not mean the state court's contrary conclusion was unreasonable."

Harrington v. Richter, 562 U.S. 86, 102 (2011).  "[A] state prisoner must

show that the state court's ruling on the claim being presented in federal

court was so lacking in justification that there was an error well understood

and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103 (citation omitted). The federal court employs a " 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.' " Pinholster, 563 U.S. at 181 (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court." O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b). The Petitioner must have apprised the state court of the federal constitutional claim, not just the underlying facts of the claim or a "somewhat similar state-law claim." Snowden v. Singletary, 135 F.3d 732, 735 (11th Cir. 1998) (quoting Anderson v. Harless, 459 U.S. 4, 5-6 (1982)). In order for remedies to be exhausted, "the petitioner must have given the state courts a 'meaningful opportunity' to address his federal claim." Preston v. Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 457 (11th Cir. 2015) (quoting McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005)). Petitioner must "fairly present" his claim in each appropriate state court in order to alert the state courts to the federal nature of the claim. Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 275 (1971); O'Sullivan v. Boerckel, 526

U.S. 838, 845 (1999). The State must have been provided the " 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Henry, 513 U.S. at 365) (quoting Picard, 404 U.S. at 275 (citation omitted)). "This rule of comity reduces friction between the state and federal court systems by avoiding the 'unseem[liness]' of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." O'Sullivan, 526 U.S. at 845; *see also* Picard, 404 U.S. at 275 ("If the exhaustion doctrine is to prevent 'unnecessary conflict between courts equally bound to guard and protect rights secure by the Constitution,' it is not sufficient merely that the federal habeas applicant has been through the state courts." (citation omitted)).

In regard to claims of ineffectiveness of trial counsel, the Petitioner must have presented those claims in state court " 'such that a reasonable reader would understand each claim's particular legal basis and factual foundation.' " Ogle v. Johnson, 488 F.3d 1364, 1368 (11th Cir. 2007) (citing McNair, 416 F.3d at 1302).

In order to obtain review where a claim is unexhausted and, thus, procedurally defaulted, the Petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice.

Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993). In order to demonstrate cause, Petitioner must show that an "external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." Alderman v. Zant, 22 F.3d 1541, 1551 (1994) (citing Murray v. Carrier, 477 U.S. 478, 488 (1986)); *see also* McCleskey v. Zant, 499 U.S. 467, 497 (1991) (emphasizing that the external impediment must have prevented the petitioner from raising the claim). A federal court may grant a habeas petition on a procedurally defaulted claim without a showing of cause or prejudice if necessary to correct a fundamental miscarriage of justice. Henderson v. Campbell, 353 F.3d 880, 892 (11th Cir. 2003). In order to satisfy the miscarriage of justice exception, the Petitioner must show that a constitutional violation has occurred that "probably resulted in a conviction of one who is actually innocent"—that it is more likely than not that no reasonable juror would have convicted him—which is a stronger showing than is necessary to establish prejudice. *See* Schlup v. Delo, 513 U.S. 298, 327 (1995). This standard "thus ensures that petitioner's case is truly 'extraordinary.' " *Id.* (citing McCleskey, 499 U.S. at 494). Such a case is "extremely rare." Schlup, 513 U.S. at 324.

This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." Pinholster, 563 U.S. at 181. The state court's factual findings are entitled to a presumption of correctness and to rebut that presumption, the Petitioner must show by clear and convincing evidence that the state court determinations are not fairly supported by the record. *See* 28 U.S.C. § 2254(e)(1). However, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions" and "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). *See also* Swarthout v. Cooke, 562 U.S. 216, 222 (2011) ("[W]e have long recognized that 'a "mere error of state law" is not a denial of due process.' " (quoting Engle v. Isaac, 456 U.S. 107, 121, n.21 (1982))).

For claims of ineffective assistance of counsel, the United States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).  To demonstrate

deficient performance, a "defendant must show that counsel's performance

fell below an objective standard of reasonableness."  *Id.* at 688.  Counsel is

"strongly presumed to have rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional judgment."

Burt v. Titlow, 134 S. Ct. 10, 17 (2013) (quoting Strickland, 466 U.S. at

690).  Federal courts are to afford "both the state court and the defense

attorney the benefit of the doubt."  *Id.* at 13.  The reasonableness of

counsel's conduct must be viewed as of the time of counsel's conduct.  *See*

Maryland v. Kulbicki, 136 S. Ct. 2, 4 (2015) (citing Strickland, 466 U.S. at

690).

To demonstrate prejudice under Strickland, a defendant "must show

that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different."  466 U.S. at

694.  "A reasonable probability is a probability sufficient to undermine

confidence in the outcome."  *Id.*  For this Court's purposes, "[t]he question

'is not whether a federal court believes the state court's determination'

under the Strickland standard 'was incorrect but whether that determination

was unreasonable—a substantially higher threshold.' "  Knowles v.

Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550

U.S. 465, 473 (2007)).  "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  Mirzayance, 556 U.S. at 123. It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard."  *Id.*  Both deficiency and prejudice must be shown to demonstrate a violation of the Sixth Amendment.  Thus, the court need not address both prongs if the petitioner fails to prove one of the prongs.  Strickland, 466 U.S. at 697.

### Ground 1: Ineffective Assistance of Trial Counsel

Petitioner alleges ten instances of ineffective assistance of trial counsel.  ECF No. 10 at 5, 15.  In its answer to this ground, the Respondent, without any discussion of the specific subclaims or the merits of them, states that Respondent adopts the factual findings and legal conclusions of the post-conviction court set forth in the order denying post-conviction relief.  ECF No. 20 at 15.

In **Subclaim 1**, it is contended that trial counsel was ineffective in advising Petitioner not to testify.  ECF No. 10 at 5.  This claim was raised as Ground 4 in Petitioner's post-conviction motion.  Ex. E at 74.  Petitioner contended in his motion that when the prospective jurors were asked if not hearing from Petitioner would affect their deliberations, four jurors who

answered that it would affect them remained on the jury.  Petitioner

contended there was no basis for counsel to conclude that Petitioner's

testimony would present a risk of prejudice.  Ex. E at 75.  He stated in his

motion that when he told his counsel he wished to testify, his counsel

advised him that testimony from a convicted felon would carry no credibility.

*Id.*

The post-conviction court denied relief, stating that after the State

rested, the court advised Petitioner that he had a right to testify and it was

his decision alone to make.  Ex. E at 93 (citing trial transcript, Ex. C at 198-

200).  The court noted that at that time, Petitioner confirmed he understood

that right and was satisfied with his attorney.  Ex. E at 93.  The post-

conviction court found that Petitioner's claim that his counsel stopped him

from testifying was refuted by the record.  *Id.*  The court was correct that

the record shows Petitioner was advised that it was his decision alone

whether to testify.

Petitioner does not identify by name which jurors expressed concern

over a defendant's failure to testify and whom he contends later served on

the jury.  One prospective juror who expressed concern and later served on

the jury was Juror M.A.  When the jurors were asked whether the

defendant's not testifying would have an impact on them, Juror M.A. stated,

"Yes, I would want to hear his side of the story." Ex. B at 57 (transcript pagination). In answer to the same question, Juror D.C., who also served on the jury, stated, "It would probably have an impact if I didn't hear his side." *Id.* Juror A.E., who served on the jury, also answered, "I would want to hear it, and it would probably make a difference either way." Ex. B at 58. Juror G.M. said, "I need to hear what they say." *Id.*

At the beginning of voir dire, the trial judge had instructed the jury that the defendant is presumed innocent and is not required to present evidence or prove anything. Ex. B at 25. After some of the jurors expressed concern if the defendant did not testify, the court again instructed the jurors during voir dire that Petitioner had pled not guilty and the burden was on the state to prove guilt. Ex. B at 60. After that instruction, some of the jurors were asked if, after that instruction and discussion by the judge, whether the jurors would still have concern if Petitioner did not testify. Juror G.M. was asked at that point if she would still "think an innocent guy would probably have gone up there and said something?" She answered, "No, no." Ex. B at 64. A number of the other prospective jurors who did not serve on the jury indicated that they would not hold it against Petitioner if he did not testify. Ex. B at 64-69.

At the close of the case, during jury instruction, the court again

instructed the jury, in pertinent part, as follows:

> THE COURT:  The defendant has entered a plea of not guilty.
> This means you must presume or believe the defendant is
> innocent.  The presumption stays with the defendant as to each
> and every material allegation in the Information through each
> stage of the trial, unless it has been overcome by the evidence
> to the exclusion of and beyond a reasonable doubt.
>     To overcome the defendant's presumption of innocence,
> the State has the burden of proving the crime with which the
> defendant is charged was committed, and the defendant is the
> person who committed the crime.
>     The defendant is not required to present evidence or
> prove anything. . . .
>     Ladies and Gentlemen of the jury, the Constitution
> requires the State to prove its accusations against the
> defendant.  It is not necessary for the defendant to disprove
> anything, nor is the defendant required to prove his innocence.
> It is up to the State to prove the defendant's guilt by evidence.
>     The defendant exercised a fundamental right by choosing
> not to be a witness in this case.  You must not view this as an
> admission of guilty or be influenced in any way by his decision.
> No juror should ever be concerned that the defendant did or did
> not take the witness stand to give testimony in the case.

Ex. C at 244, 247-48.

Jurors are presumed to follow the law as instructed by the court and

to comply with their oath.  Hallford v. Culver, 459 F.3d 1193, 1204 (11th

Cir. 2006); United States v. Ramirez, 426 F.3d 1344, 1352 (11th Cir. 2005).

The Eleventh Circuit has explained,

> We also deem it essential in this inquiry to apply the well-
> recognized presumption that a jury follows its instructions. *E.g.,*
> Parker v. Randolph, 442 U.S. 62, 73 (1979) ("A crucial

assumption underlying that system [of trial by jury] is that juries will follow the instructions given them by the trial judge.  Were this not so, it would be pointless for a trial court to instruct a jury."); *id.* at 75 n.7 ("The 'rule'—indeed, the premise upon which the system of jury trials functions under the American judicial system—is that juries can be trusted to follow the trial court's instructions."); Raulerson v. Wainwright, 753 F.2d 869, 876 (11th Cir. 1985) ("Jurors are presumed to follow the law as they are instructed.").

United States v. Brown, 983 F.2d 201, 202-03 (11th Cir. 1993).  "In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law.  An assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, "nullification," and the like.  A defendant has no entitlement to the luck of a lawless decisionmaker, even if a lawless decision cannot be reviewed." Strickland, 466 U.S. at 694-95.

The jurors are presumed to have followed the law and not hold it against Petitioner for not testifying, and Petitioner has not shown that any prejudice flowed from his counsel's advice to him not to testify.  Further, as the post-conviction court found, he was advised at the close of the State's case that the decision to testify was his alone.  The state appellate court affirmed denial of post-conviction relief.  For these reasons, the post-

conviction court's denial of relief on Subclaim 1 was not shown to be unreasonable and habeas relief on this subclaim should be denied.

In **Subclaim 2,** Petitioner contends that trial counsel rendered ineffective assistance by failing to move to strike prospective juror D.C. for bias in favor of law enforcement.  ECF No. 10 at 15.  Juror D.C. did serve on the jury.  This claim was raised as Ground 5 in Petitioner's motion for post-conviction relief.  Ex. E at 75.  In that claim, Petitioner contended that Juror D.C. answered in the affirmative when asked if she would believe a police officer simply because he is a police officer, without hearing more. Ex. E at 75.  Juror D.C. explained, "I would tend to believe him only because that's how we're raised.  We're raised to trust law enforcement officers and we're raised to believe their testimony, so, yes, I would."  Ex. B at 71-72.

The post-conviction court denied the claim, stating that the claim of bias in favor of law enforcement was not a claim of actual bias against Petitioner and, further, that the law enforcement testimony was not an integral part of the State's case.  Ex. E at 94.  The court noted that Deputy Michael Lee was dispatched to the scene after the incident was over and spoke to the victims.  He testified he did not observe any injuries and he did not offer any critical testimony proving the State's case.  *Id.*  Based on

these observations, the court found Petitioner could not meet the prejudice

prong of Strickland. *Id.* The state appellate court affirmed denial of relief.

The Florida Supreme Court explained in Carratelli v. State, 961 So.

2d 312 (Fla. 2007):

> "[T]he test for prejudicial error in conjunction with a direct
> appeal is very different from the test for prejudice in conjunction
> with a collateral claim of ineffective assistance." Sanders v.
> State, 847 So. 2d 504, 506 (Fla. 1st DCA 2003) (en banc)
> (quoting Hill v. State, 788 So. 2d 315, 318 (Fla. 1st DCA 2001)),
> approved, 946 So. 2d 953 (Fla. 2006). On direct appeal, to
> obtain a new trial a defendant alleging the erroneous denial of a
> cause challenge must show only that preserved error occurred.
> *See* Goodwin v. State, 751 So. 2d 537, 544 (Fla.1999). To
> obtain postconviction relief, however, the standard is much
> more strict.

*Id.* at 317-18. In order to establish ineffective assistance of counsel in

failing to exercise or preserve a challenge to a potential juror, the Petitioner

must establish both deficient performance and prejudice under Strickland.

*See* Carratelli, 961 So. 2d at 320 (citing Strickland, 466 U.S. at 687).

"Therefore, 'an error that may justify reversal on direct appeal will not

necessarily support a collateral attack on a final judgment.' " Carratelli, 961

So. 2d at 320. Where a post-conviction motion alleges that trial counsel

was ineffective for failing to challenge a juror, the Petitioner must show that

the juror was actually biased against the Petitioner "and the evidence must

be plain on the face of the record." Fennell v. Sec'y, Fla. Dep't of Corr.,

582 F. App'x 828, 832 (11th Cir. 2014) (unpublished) (quoting Carratelli,

961 So. 2d at 324).

The Eleventh Circuit held in Fennell that the defendant could not

show prejudice in counsel's failure to strike a juror who favored the victim

out of sympathy.  The Court stated that the juror, "along with the other

empaneled jurors took an oath to be fair and impartial.  Jurors are

presumed to follow the law as instructed by the trial court and to comply

with their oaths.  Without any evidence that [the juror] was actually biased,

we must presume that he followed the trial judge's instructions, set aside

his feelings of sympathy, and was fair and impartial during deliberations."

Fennell, 582 F. App'x at 832 (citation omitted).

At the conclusion of the trial in the present case, the jury was

instructed, "Your verdict should not be influenced by feelings of prejudice,

bias or sympathy.  Your verdict must be based on the evidence and the law

contained in these instructions."  Ex. C at 249.  Jurors are presumed to

follow the law as instructed by the court and to comply with their oath.

Strickland, 466 U.S. at 694; Hallford, 459 F.3d at 1204; Ramirez, 426 F.3d

at 1352.  Thus, it must be presumed that the jurors who expressed

confidence in law enforcement in voir dire would follow the law as

instructed and not reach their verdict based on any bias either against Petitioner or in favor of law enforcement.

Regardless of whether trial counsel should have moved to dismiss Juror D.C., Petitioner has failed to establish prejudice, which is necessary in order to obtain habeas relief.  Petitioner was charged with aggravated battery on Brittni Freeman, a pregnant woman, and battery on Hope Cattell. At trial, Cattell testified that Petitioner, who was her boyfriend, appeared at her apartment and saw a man running from the house.  Ex. B at 155-56. She testified that Petitioner was angry and threw her to the floor and began choking her.  Ex. B at 156.  They continued the argument and altercation out onto the porch where he threw a small liquor bottle at her, hitting her, and he was "slinging" her around.  *Id.*  Cattell testified her daughter, Brittni Freeman, was present and proceeded to call Cattell's father.  Ex. B at 157. Petitioner then "shouldered [Freeman] first and then pushed her down."  *Id.* At the time, Brittni was nine months pregnant.  Ex. B at 163-64.

Brittni Freeman testified that she saw Petitioner holding her mother on the floor where he "had her by the neck."  Ex. B at 166.  Freeman said the next day, she saw swelling on her mother's face and bruises on her neck.  Ex. B at 175.  Freeman testified that when Petitioner pushed her down while she was on the telephone, she landed on her pregnant

stomach.  Ex. B at 169.  She testified that she was "spotting" the next morning.  Ex. B at 170.  Freeman said Petitioner knew she was pregnant because she had told him and that she was "showing."  Ex. B at 169-70.

The only law enforcement officer to testify was Officer Michael Lee of the Escambia County Sheriff's Office.  Ex. B at 187.  He testified that he responded to a dispatch to the Cattell residence and spoke to her and Freeman.  He said Cattell was crying but he observed no injuries on her. Ex. B at 188-89.  He testified that Freeman was "obviously pregnant."  Ex. B at 189.  Officer Lee also testified that Petitioner denied hitting either Cattell or Freeman, but that Petitioner was arrested on the basis of the statements given by both victims.  Ex. B at 190.  He also testified on cross-examination that Petitioner appeared calm.  Ex. B at 193.

Because the law enforcement testimony was not critical to the State's case and presented facts that were in part helpful to the defense, Petitioner cannot demonstrate prejudice in counsel's failure to remove Juror D.C. for her alleged bias in favor of law enforcement.  The adjudication of the state post-conviction court in denying relief on Subclaim 2, and the affirmance of it by the state appellate court, have not been shown to be contrary to or involving an unreasonable application of Strickland or any other federal law as determined by the Supreme Court.  Nor has Petitioner demonstrated

that the state courts' adjudication of this subclaim resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding as required by 28 U.S.C. § 2254(d) to establish a basis for habeas relief.  Subclaim 2 should be denied.

In **Subclaim 3**, Petitioner contends that his trial counsel rendered ineffective assistance by moving to exclude evidence of statements of prior instances of abuse by Petitioner that were made by the two victims during their depositions.  This claim was raised in Ground 6 of Petitioner's Rule 3.850 motion.  Ex. E at 76.  He contended that "[c]ounsel may have thought it would be beneficial to exclude this evidence, but it would have displayed inconsistencies between witnesses' initial version of events to arresting officers and cast doubt on the credibility of their testimony."  Ex. E at 76. The post-conviction court denied the claim, finding that "any probative value the prior instances of abuse would have had at trial would have been vastly outweighed by their prejudicial impact.  Since prior evidence of abuse by Defendant was properly excluded at trial, this claim is denied." Ex. E at 94.

At trial, prior to the start of the State's case and after the "rule" was invoked, the following discussion occurred:

THE COURT:  Thank you.  All right.  Do I need to tell the other witnesses, or who wants to tell them?

MS. HENSLEY (prosecutor):  I think they may have to come in, Your Honor, once they do get here because there are issues that I am going to ask you to instruct them on.

THE COURT: Okay.  What are those going to be?

MR. STAPLES (defense counsel):  I think actually I've already notified the State.  They are in agreement with everything that I think we have thus far, except for one thing, potentially.  Motions in limine, they are just oral, to prevent any statements about any past abuse by Mr. Lee.  The State is in agreement, from what I understand.

THE COURT:  As to abuse of the victim?

MR. STAPLES:  Yes, sir, or either party.

THE COURT:  Any past incidents of batteries or past violence.

MR. STAPLES:  Yes, sir.

THE COURT:  Okay.

MR. STAPLES:  No discussing the defendant has ever gone to prison, nothing about the alleged knife lying on the bed or anything, because in deposition she said she knew he was waiting on him.

THE COURT:  He was what?

MR. STAPLES:  She said she knew he was waiting on her - - on them.  No testimony about that either.  Nothing about her threatening to cut his GPS off and nothing - - no statement about any gun.

THE COURT:  No statements about what?

MR. STAPLES:  An alleged gun.  She didn't tell the police officer, but she said it in depositions and it's something there was - - the State, I believe, is in agreement with all these things.

Ex. B at 100-01.  The post-conviction court's denial of this claim, finding

that trial counsel was not ineffective in making the motion to exclude those

references, was affirmed on appeal.  Ex. E at 94; Ex. F.

Petitioner conceded in his post-conviction claim that counsel likely

made a strategic decision to exclude the evidence.  Petitioner stated in

part, "Counsel may have thought it would be beneficial to exclude this

evidence."  Ex. E. at 76.  The Supreme Court has explained:

> Judicial scrutiny of counsel's performance must be highly
> deferential.  It is all too tempting for a defendant to second-
> guess counsel's assistance after conviction or adverse
> sentence, and it is all too easy for a court, examining counsel's
> defense after it has proved unsuccessful, to conclude that a
> particular act or omission of counsel was unreasonable.  Cf.
> Engle v. Isaac, 456 U.S. 107, 133-134 (1982).  A fair
> assessment of attorney performance requires that every effort
> be made to eliminate the distorting effects of hindsight, to
> reconstruct the circumstances of counsel's challenged conduct,
> and to evaluate the conduct from counsel's perspective at the
> time.  Because of the difficulties inherent in making the
> evaluation, a court must indulge a strong presumption that
> counsel's conduct falls within the wide range of reasonable
> professional assistance; that is, the defendant must overcome
> the presumption that, under the circumstances, the challenged
> action "might be considered sound trial strategy."  *See* Michel v.
> Louisiana, *supra*, 350 U.S., at 101.  There are countless ways
> to provide effective assistance in any given case.  Even the
> best criminal defense attorneys would not defend a particular
> client in the same way.

Strickland, 466 U.S. at 689.  The trial colloquy demonstrates that evidence

Petitioner had been abusive in the past to one or both victims would have

been extremely prejudicial, and that prejudice would have far outweighed any inconsistences in the victim's statements.[3]  Further, allowing statements from the deposition into evidence could have opened the door to other prejudicial information that was disclosed in the depositions, as the colloquy showed.  The record discloses that counsel made a strategic decision not to allow evidence of earlier instances of abuse into evidence.

As discussed earlier, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' "  Mirzayance, 556 U.S. at 123 (quoting Schriro, 550 U.S. at 473).  The Strickland standard is a general standard, thus a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.  Mirzayance, 556 U.S. at 123.  Under this "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard," id., Petitioner has failed to demonstrate that the adjudication of the state courts was unreasonable or contrary to Strickland or any federal law as determined by the Supreme Court.  Relief on Subclaim 3 should be denied.

---

[3] Petitioner does not specify what possible inconsistences would have been disclosed by allowing evidence of his past abuse of the victims.

In **Subclaim 4**, Petitioner contends that trial counsel rendered ineffective assistance by failing to object to the State's violation of the order on defense counsel's motion in limine. ECF No. 1 at 15. This claim was raised as Ground 7 in Petitioner's Rule 3.850 motion. Ex. E at 77. He contended that the prosecutor, by hypothetical reference, violated the court's order not to mention that Petitioner possessed a knife or a gun. *Id.* The post-conviction court denied the claim, stating "Defendant, however, has not cited to any portion of the record showing that the State violated the motion in limine and the Court has not found any instance after reviewing the entire trial transcript." Ex. E at 95. In his claim in this Court Petitioner again fails to identify any portion of the trial transcript in which the prosecutor made reference to Petitioner possessing a knife or gun—either actually or hypothetically.

A review of the trial transcript confirms the post-conviction court's finding that nowhere in the trial did the prosecutor suggest, even hypothetically, that Petitioner had or was near a gun or a knife. In fact, the opposite suggestion was made in closing when the prosecutor said, "Also, the defense is saying that they [the victims] made this up. Well, if they really made up this incident, why didn't they make up something worse like,

'He had a gun, He pointed it to my head.  He had a knife and he tried to stab me.'  They didn't."  Ex. C at 240.

Petitioner has not demonstrated that the state court's adjudication of this subclaim was unreasonable or contrary to any federal law as determined by the Supreme Court.  Nor has he demonstrated that the adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the record.  Relief on Subclaim 4 should be denied.

In **Subclaim 5**, Petitioner contends that trial counsel was ineffective for failing to properly cross-examine the victims with the police report, their statements, their deposition, and trial testimony.  ECF No. 10 at 15.  A version of this claim was raised as Ground 10 in his Rule 3.850 motion where Petitioner argued that trial counsel rendered ineffective assistance by failing to cross-examine the victims with their statements in the police report which conflicted with testimony they gave at their depositions and at trial.  Ex. E at 79.  Although Petitioner contended that the deposition and trial testimony "fabricated" a much more violent version of events than that stated in the police report, he has not provided details on which portions of the report differed substantially from the later testimony.  The post-conviction court denied the claim, finding the conclusory statements of

Petitioner insufficient to warrant relief and concluding that the cross-examination of the victims was not ineffective.  Ex. E at 96.  The state appellate court affirmed.

A copy of the arrest report and probable cause statement contained in the record indicates that Hope Cattell was shaking and crying and told Officer Lee that Petitioner "yelled he was going to slap her with a bottle" and that he pushed her in her face.  Ex. A at 3.  The report also states that Cattell saw Petitioner push Brittni Freeman to the ground.  *Id.*  In the report, Freeman told Officer Lee that she saw Petitioner pushing Cattell and that he pushed Freeman to the ground onto her stomach.  Ex. A at 4.  That the police report does not contain every fact testified to at trial does not render the report conflicting or contradictory to the trial testimony, nor does it demonstrate that the trial testimony was "fabricated" as Petitioner alleged.

Even if trial counsel should have cross-examined the victims as to why the police report did not state that Petitioner was holding Cattell down by her throat, prejudice cannot be established.  Petitioner was charged only with simple battery on Cattell, which was proven by the statements in the police report and by the testimony that Cattell gave at trial.  As to that portion of the police report relating to Freeman, the report that Petitioner "pushed her down to the ground forcing her to land on her stomach" was

consistent with her trial testimony.  *See* Ex. A at 4.  The police report also

reported Freeman as stating that Petitioner knew she was pregnant, as she

testified at trial.  Thus, Petitioner cannot show a reasonable probability that,

but for the alleged error of counsel, the result of the trial would have been

different.

Petitioner has not demonstrated that the state court's adjudication

was unreasonable.  As discussed earlier, "even a strong case for relief

does not mean the state court's contrary conclusion was unreasonable."

Richter, 562 U.S. at 102.  The Supreme Court has explained the limited

basis for habeas relief:

> As amended by AEDPA, § 2254(d) stops short of imposing a
> complete bar on federal-court relitigation of claims already
> rejected in state proceedings. . . .  It preserves authority to
> issue the writ in cases where there is no possibility fairminded
> jurists could disagree that the state court's decision conflicts
> with this Court's precedents.  It goes no further.  Section
> 2254(d) reflects the view that habeas corpus is a "guard against
> extreme malfunctions in the state criminal justice systems," not
> a substitute for ordinary error correction through appeal.
> Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J.,
> concurring in judgment).  As a condition for obtaining habeas
> corpus from a federal court, a state prisoner must show that the
> state court's ruling on the claim being presented in federal court
> was so lacking in justification that there was an error well
> understood and comprehended in existing law beyond any
> possibility for fairminded disagreement.

*Id.* at 102-03 (citation omitted).  Petitioner has not made this showing in

Subclaim 5.  Accordingly, habeas relief on this subclaim should be denied.

In **Subclaim 6**, Petitioner contends his trial counsel was ineffective for failing to object to witness Herman Strickland's testimony that Freeman told him on the telephone that Petitioner hit Cattell with a bottle.  ECF No. 10 at 15.  This claim was raised as Ground 3 in Petitioner's motion for post-conviction relief in state court.  Ex. E at 73.  The state court denied relief, finding the statement to be hearsay but admissible as an excited utterance exception.  Ex. E at 93.  The court further found that even if the statement was inadmissible hearsay to which counsel should have objected, the outcome of the proceeding would not have been different.  *Id.*

The State presented the testimony of Freeman's grandfather Herman Strickland.  Ex. B at 182.  He testified that on April 7, 2012, he received a telephone call from Freeman.  He testified further:

> Q (prosecutor):  And how did she sound when you received that phone call?
> A. (Strickland):  She was very upset and afraid.
> Q.  Was she crying?
> A.  She was crying, screaming at me.
> Q.  And what did she say?
> A.  She said that they were in a fight.
> Q.  Who was in a fight?
> A.  Her mother.
> Q.  And?
> A.  And Lee.
> Q.  Is that the defendant?

A.  Yes.

Q.  And what else did she say?

A.  She just said that he hit her with a bottle.

Q.  And did you hear anything else?

A.  He - - I heard someone ask, "Who are you on the phone with?"

Q.  Did you recognize the voice?

A.  Not really.

Q.  Okay.  Did Ms. Freeman tell you anything else?

A.  Just he said that - - she answered, said, "I'm on the phone with my Papa."

Q.  Okay.  And what else did she say?

A.  Then she said, "He pushed me."

Q.  And that's Ms. Freeman?

A.  And I told her to call the police.

Q.  And when she said "He pushed me," was that your granddaughter saying that?

A.  Yes, to me.

Ex. B at 183-84.  No objection was lodged to this testimony.

Under Florida law,

"Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." § 90.801(1)(c), Fla. Stat (2012).  The excited utterance exception authorizes admission of hearsay containing "[a] statement or excited utterance relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." § 90.803(2), Fla. Stat (2012).  "[T]o qualify as an excited utterance, the statement must be made: (1) 'regarding an event startling enough to cause nervous excitement'; (2) 'before there was time to contrive or misrepresent'; and (3) 'while the person was under the stress or

excitement caused by the event.' " Hudson, 992 So. 2d at 107
(quoting Henyard v. State, 689 So. 2d 239, 251 (Fla. 1996)).
"This Court has observed that '[i]f the statement occurs while
the exciting event is still in progress, courts have little difficulty
finding that the excitement prompted the statement.' " Id.
(alteration in original) (quoting State v. Jano, 524 So. 2d 660,
662 (Fla. 1988)).

Pasha v. State, No. SC13-1551, 2017 WL 1954975, at *11 (Fla. May 11,

2017), reh'g denied, 2017 WL 3910509 (Fla. Sept. 7, 2017).  The post-

conviction court was correct that the statements related by witness

Strickland meet the requirements of section 90.803(2) as an excited

utterance exception to the hearsay rule.  The call was made regarding a

startling event and while Freeman was observing the event and was under

the stress of the event.  There was no time for her to contrive or

misrepresent.  Thus, trial counsel was not deficient for failing to object, and

such objection would likely have been overruled.[4]  Moreover, as the post-

conviction court found, even if counsel should have objected, Petitioner has

failed to meet the prejudice prong of Strickland.  Based on the testimony of

---

[4] Petitioner does not contend that trial counsel should have objected on the basis of
violation of the Confrontation Clause pursuant to Crawford v. Washington, 541 U.S. 36
(2004).  Even if he had done so, any objection based on Crawford would have lacked
merit.  The statements by Freeman to her grandfather would not fall under the category
of out-of-court statements that are "testimonial."  See Michigan v. Bryant, 562 U.S. 344,
358 (2011) (holding that out-of-court "excited utterance" by unavailable victim reporting
the incident in order to enable assistance, and not create a record for trial, was not a
violation of the Confrontation Clause).  Moreover, in the present case, Freeman did
testify at trial and was subject to cross-examination.

victims Cattell and Freeman, there is no reasonable probability that but for

any error in failing to object to Herman Strickland's recitation of the

telephone call, Petitioner would have been acquitted.  For these reasons,

Petitioner has failed to establish entitlement to federal habeas relief under

28 U.S.C. § 2254(d).  Habeas relief on Subclaim 6 should, therefore, be

denied.

In **Subclaim 7**, Petitioner contends that trial counsel rendered

ineffective assistance by failing to conduct an adequate pretrial

investigation and failing to interview and call witnesses.  ECF No. 10 at 15.

This claim was raised in the state post-conviction court as Ground 11

where Petitioner argued that trial counsel should have investigated and

called as witnesses the doctor referred to by Freeman and the person

Freeman testified was a nurse, Susan Duponte, who saw Freeman

immediately after the incident and said she felt no contractions.  Freeman

testified that after the altercation in which Petitioner hit her mother and then

pushed her (Freeman) to the ground where she landed on her stomach,

she and her mother went to Duponte's house several blocks away from the

scene to call law enforcement.  Ex. B at 180.  Freeman testified she

refused medical assistance on the scene because she wanted to call her

own doctor, and that she did not go to the hospital "[b]ecause Susan

Duponte is a nurse and she was feeling on my stomach and she told me that I wasn't contracting."  Ex. B at 181.  Freeman testified, "It was just the next morning that I started spotting" and that she did contact her doctor.  *Id.*

Petitioner argued in his post-conviction motion: "Had trial counsel investigated this alleged crime and interviewed the witnesses who she claim (sic) assisted her, defense counsel would have gotten their side of the story which would undoubtedly conflicted with Brittni's allegation, would have learned that Susan Duponte is not a nurse, and there's no way a nurse or anyone can feel a Nine (9) months pregnant person's stomach and say that the baby's ok."  Ex. E at 80.  He also alleged in the motion that the doctor's testimony would have likely proved that Brittni Freeman lied about what had happened.  *Id.*  Petitioner contended that if these investigations were made and these persons had been called to testify, Freeman would have been discredited and a verdict of not guilty would have been rendered.  Ex. E at 80-81.

The post-conviction court denied the claim, finding that the testimony of the doctor or Duponte would be collateral and irrelevant to the question of whether Petitioner committed a battery against Freeman or Cattell.  Ex. E at 96-97.  The court found that no prejudice could be demonstrated and thus counsel was not ineffective.  The state appellate court affirmed.

Petitioner's claim was purely speculative that testimony from the doctor or Duponte would conflict with Freeman's testimony or prove that Freeman or Cattell lied. And as the post-conviction court found, whether Freeman had injuries or was spotting due to being pushed to the ground—and whether Duponte is really a nurse—are collateral issues to the charges of felony battery on a pregnant person and battery. The charges against Petitioner do not require proof of injury or proof that the victim sought medical assistance. Petitioner argues that the testimony could have been the basis of impeachment for Freeman's testimony, but impeachment on a collateral issue under Florida law is generally inadmissible. *See* Foster v. State, 869 So. 2d 743, 745 (Fla. 2d DCA 2004). Florida law provides that a witness's credibility may be attacked by proof through other witnesses that "material facts" are not as testified to by the witness being impeached. § 90.608(5), Fla. Stat. (2012). An issue is collateral—and thus not admissible for purposes of impeachment by contradiction—if it cannot be introduced for any reason other than contradiction. Barkley v. Jones, No. 4:15cv296, 2016 WL 4084061 (N.D. Fla. June 22, 2016) (citing Griffin v. State, 827 So. 2d 1098, 1099 (Fla. 1st DCA 2002)), adopted 2016 WL 4107704 (N.D. Fla. July 28, 2016)). Whether Freeman was injured by the battery and whether Duponte was really a nurse were collateral matters

and Petitioner has failed to show that the evidence Petitioner contends should have been offered at trial would have been admitted by the court for the purposes of impeaching the credibility of Freeman and that there is a reasonable probability that if the evidence had been introduced, the outcome of the trial would have been different.

The state courts' adjudication of this subclaim is entitled to AEDPA deference and has not been shown to be unreasonable in light of the speculative nature of Petitioner's claim and the collateral nature of the testimony Petitioner alleges should have been secured.  Accordingly, habeas relief on Subclaim 7 should be denied.

In **Subclaim 8**, Petitioner contends that trial counsel rendered ineffective assistance by failing to call an "on scene" witness to testify. ECF No. 10 at 15.  He raised this claim in his Rule 3.850 motion as Ground 12, in which he claimed that trial counsel should have presented the testimony of Julian Thomas,[5] Freeman's boyfriend.  Ex. E at 81-82. Petitioner argued to the state court that "trial counsel claimed that he believed that doing so would hold no beneficial value, but [counsel] admitted that he didn't even conduct a deposition of this witness . . . ."  Ex.

_____

[5] In his claim, Petitioner refers to Freeman's boyfriend as Julian Johnson, but during trial, when the issue was discussed, the boyfriend was identified as Julian Thomas. Ex. C at 201.

E at 81.  Petitioner argued that counsel should have investigated this witness and presented his testimony because Thomas was bigger than Petitioner and "if he is willing to help the mom, why do nothing to help his pregnant girlfriend?"  *Id.*  He further argued that "[i]t's a great possibility that Mr. Johnson (sic) testimony may have showcased those inconsistencies [between the police report and the victim's testimony] and major discrepancies."  *Id.*

The post-conviction court denied the claim, finding that trial counsel made a strategic decision not to call Freeman's boyfriend to testify and that " [a]ny suggestion that Mr. Thomas' testimony would have resulted in a different outcome is far too speculative to warrant relief and this claim is denied."  Ex. E at 97.  The denial of relief was affirmed on appeal.  At trial, Brittni Freeman testified that she was on the porch when she heard Petitioner and her mother arguing but when she and her boyfriend attempted to get in the house, the door was either being held shut by Petitioner or was locked.  Ex. B at 166-67.  She said she ran to the window and saw Petitioner holding Cattell on the floor by the throat.  Ex. B at 167.  Once her mother got up, the argument continued outside the house where she saw Petitioner throw the liquor bottle at Cattell.  *Id.*  Freeman then called her grandfather, at which time Petitioner bumped into her and

pushed her to the ground.  *Id.*  No other references were made to what her boyfriend was doing at that time.

At the conclusion of the trial, the judge asked Petitioner if he was satisfied with his attorneys in all respects, to which he responded yes, but he said he did have a question concerning the boyfriend.  Petitioner stated, "Like, for instance, if her father of her baby was there at the - - present at the time, why would he allow me to push his mother of his child?"  Ex. C at 200.  After counsel indicated he did not plan on calling Thomas to testify, the following discussion was held:

> THE COURT:  And is this a strategic decision on your part as to not call him?
>
> MR. STAPLES:  Oh, yes, sir.
>
> THE COURT:  Is there anything you can articulate?  I don't want to get into attorney/client privilege.  I mean, is there something on the record that I'll, you know, or that you have explained to Mr. Lee why you would not call this person?
>
> MR. STAPLES:  I think the benefit of anything that he would possibly say, he's - - I think he would hurt us more than help us is really where I'm going.
>
> THE COURT:  Okay.  You've deposed the person then, or interviewed him?
>
> MR. STAPLES:  We haven't interviewed him, but he's the boyfriend of the victim.  He - - I mean, I don't see that he's going to be helpful in any way.
>
> THE COURT:  Okay.  And so you're not - - I mean, you don't believe he'd help your case?
>
> MR. STAPLES:  Not at all.

THE COURT: I mean, he might say, "I'm afraid of Mr. Lee.  I mean, he's a bigger man than me.  He might beat me up."

MR. STAPLES: Yes, sir.

THE COURT:  "I know his reputation of being a tough guy and beating people up."

I mean, I don't know what he might have said, Mr. Lee. There may be several reasons.  I don't think at this time I have a concern why they're not calling him, and I can see several reasons why they wouldn't.  So that's where we're at right now.

Ex. C at 204-05.  Trial counsel also advised the court that he had no intention of getting into the issue of the presence of the boyfriend "except for arguing it in closing."  Ex. C at 201.  In closing argument, trial counsel argued that the incident never happened, and supported that argument with the comment: "And what about the boyfriend, who is basically present there?  He never called [the police] either or tried to stop anything?  You never heard any evidence of that."  Ex. C at 230.  Thus, counsel used the absence of testimony by the boyfriend or about the boyfriend's actions during the incident to support the contention that the incident never occurred.

The trial court and the post-conviction court concluded that counsel had a reasonable strategic reason for not presenting the testimony of the boyfriend, and counsel used the lack of the boyfriend's testimony to support the defense's case.  The state courts' adjudication of this claim was not

shown to be unreasonable or that it was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.  Federal habeas relief on subclaim 8 is not warranted and should be denied.

In **Subclaim 9**, Petitioner contends that his trial counsel rendered ineffective assistance by failing to move for a judgment of acquittal.  ECF No. 10 at 15.  This claim was raised as Ground 15 in his Rule 3.850 motion.  Ex. E at 83-84.  Petitioner argued in that claim that the testimony of the victims was inconsistent and varied from the original police reports, and that there was no physical evidence to prove the batteries occurred.  Ex. E at 83.  He also contended that a motion for judgment of acquittal would have preserved the issue of sufficiency of the evidence for appeal.

The post-conviction court denied the claim, concluding that in order for counsel to be found deficient, Petitioner must state sufficient facts to show that such a motion would have been successful.  Ex. E at 98.  The court found that the testimony of the two victims that Petitioner committed a battery on a pregnant woman and a separate battery established a prima facie case and a motion for judgment of acquittal would not have been

granted.  *Id.*  The state First District Court of Appeal affirmed the denial of relief.

"To present a facially sufficient postconviction claim that counsel was ineffective for failing to raise and preserve a sufficiency of the evidence claim for appeal via a timely and contemporaneous motion for judgment of acquittal, 'a movant should state sufficient facts to show that "[he] may very well have prevailed on a more artfully presented motion for acquittal based upon the evidence he alleges was presented against him at trial." ' " White v. State, 977 So. 2d 680, 681 (Fla. 1st DCA 2008) (quoting Neal v. State, 854 So. 2d 666, 670 (Fla. 2d DCA 2003) (quoting Boykin v. State, 725 So. 2d 1203 (Fla. 2d DCA 1999))).  Petitioner makes only a conclusory allegation that if a motion for judgment of acquittal had been made, he may have prevailed on the motion because the witness's testimony was contradictory, but he provides no factual basis to support that conclusory allegation.  Because the evidence presented at trial presented prima facie evidence of the offenses alleged, Petitioner failed to demonstrate a reasonable probability that but for counsel's failure to make the motion, the outcome of the state court proceedings would have been different.  Thus, the state courts correctly denied the claim of ineffective assistance of counsel.  Habeas relief on Subclaim 9 should be denied.

In **Subclaim 10**, Petitioner contends that trial counsel was ineffective for failing to object to an incomplete jury instruction.  ECF No. 10 at 5, 15.  This claim was raised in Ground 16 in his Rule 3.850 motion, where Petitioner argued that counsel should have objected because the jury instruction failed to include "an essential element of the information as charged 'Intentionally caused bodily harm.' "  Ex. E at 84.  The post-conviction court denied the claim, stating that the Information "did not allege that Defendant had committed either offense exclusively by intentionally causing bodily harm.  Rather, the State had to show in each case that Defendant merely had touched the victim against their will."  Ex. E at 98.  The state appellate court affirmed denial of relief.

The post-conviction court was correct.  The Information filed in this case alleged in pertinent part in Count 1 that Petitioner committed the battery on Brittni Freeman, a pregnant person, by "actually and intentionally touching or striking said person against her will, or by intentionally causing bodily harm . . . ."  Ex. A at 1.  The information alleged in Count 2 that Petitioner committed a battery on Hope Elaine Cattell "by actually and intentionally touching or striking said person against said person's will, or by intentionally causing bodily harm to said person . . . ."  *Id.*  Because competent, substantial evidence was presented to show that Petitioner

intentionally touched the victims against their will, Petitioner failed to show a reasonable probability that but for trial counsel's failure to object to the jury instruction, he would have been acquitted. The adjudication of the state courts has not been shown to be contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court or that it resulted in a decision that was based on a unreasonable determination of the facts in light of the evidence in the state court proceeding. Accordingly, habeas relief on Subclaim 10 should be denied.

Because all the subclaims set forth in Ground One lack merit, habeas relief on Ground One should be denied.

## **Ground Two**

Petitioner next argues that he was denied due process and a fair trial by the trial judge's failure to remove a juror who expressed bias in favor of law enforcement and who stated that if Petitioner did not testify it would have an impact on her deliberation. ECF No. 10 at 6. The Respondent contends that the due process issue should have been raised at trial and on direct appeal, and is unexhausted and procedurally defaulted. ECF No. 20 at 15. The Respondent also correctly notes that the due process claim

was not raised in the motion for post-conviction relief.[6]  ECF No. 20 at 16.

The only juror issue raised in Petitioner's Rule 3.850 motion alleged that

trial counsel was ineffective for not striking Juror D.C.  Ex. E at 75 (Ground

5).  That ineffective assistance issue is discussed in Subclaim 2 above.

Regardless of Petitioner's failure to exhaust this claim of error by the

trial judge, the claim is without merit.  For the same reasons discussed in

Subclaim 2, Petitioner cannot demonstrate a due process violation

requiring habeas relief.  During voir dire, the venire was asked who might

give more credence to a witness who was a police officer.  Juror D.C.

explained that she would "tend to believe him only because that's how

we're raised.  We're raised to trust law enforcement officers and we're

raised to believe their testimony . . . ."  Ex. B at 72.

---

[6] Petitioner contends in his memorandum that the claim concerning a biased juror that
was raised in the state post-conviction court necessarily included a claim of trial court
error and prosecutorial misconduct in addition to ineffective assistance of counsel.  ECF
No. 26 at 3.  This is a mischaracterization of the claim raised in the state court, which
cited only ineffective assistance of counsel and the Sixth Amendment.  Ex. E at 75-76.
Petitioner also incorrectly contends in his reply that he may raise a due process claim at
any time without exhaustion in the state court.  ECF No. 23 at 2.  A section 2254 claim
of deprivation of due process must be presented first to the state courts.  *See* Preston v.
Sec'y, Fla. Dep't of Corr., 785 F.3d 449, 462 (11th Cir. 2015) (where nothing in state
court filings would have alerted the state court to the federal claim about due process,
the claim was unexhausted for purposes of § 2254 relief); Cook v. McNeil, 266 F. App'x
843, 845-46 (11th Cir. 2008) (unpublished) (finding petitioner did not bring a federal
claim about due process to the attention of the state court and it is unexhausted and
procedurally defaulted).

At the conclusion of the trial, the jury was instructed that it was up to each juror to decide what evidence is reliable based on considerations such as whether the witness had an opportunity to observe the things they testified about, whether the witness had an interest in the outcome, and whether the testimony agreed with other testimony and evidence.  Ex. C at 245-46.  The jury was told, "A juror may believe or disbelieve all or part of the evidence or testimony of any witness."  Ex. C at 246.  The court also instructed the jury, "Your verdict should not be influenced by feelings of prejudice, bias or sympathy.  Your verdict must be based on the evidence and the law contained in these instructions."  Ex. C at 249.  Jurors are presumed to follow the law as instructed by the court and to comply with their oath.  Hallford, 459 F.3d at 1204; Ramirez, 426 F.3d at 1352.  Thus, it must be presumed that the jurors who expressed confidence in law enforcement in voir dire would follow the law as instructed and not reach their verdict based on any bias either against Petitioner or in favor of law enforcement—and that they would independently evaluate the reliability of the testimony of each witness.  Neither Juror D.C. nor any other juror expressed an inability or disinclination to follow the law as instructed or to

decide the case solely on the evidence presented rather on preconceived notions of reliability of law enforcement.[7]

Moreover, the only law enforcement testimony was given by Officer Lee, who testified that Freeman was crying but that he observed no injuries on her. Ex. B at 188-89. Officer Lee also testified that Petitioner denied hitting either Cattell or Freeman, and that Petitioner appeared calm. Ex. B at 190, 193. In closing argument, trial counsel highlighted the officer's testimony that Petitioner was calm and that he denied battering either victim. Ex. C at 236. Counsel also supported his argument that no battery occurring by stating, "We know the only party that has nothing - - no dog in this fight, is Deputy Lee. And what did he tell us? She had absolutely zero injuries. Zero. Nothing." Ex. C at 226. Defense counsel later argued, "And you heard from the officer up here. He's well-trained. He's trained in investigating, in gathering evidence, in collecting it, in preserving it, and in reporting and everything. What did he tell you? He didn't take one photograph. You want to know why? Because there was nothing to take a photograph of. There's no swelling, there's no injuries, there's absolutely

---

[7] To the extent that Petitioner alleges a violation of due process because the trial judge did not excuse jurors who expressed concern if Petitioner did not testify—a claim not raised in the Rule 3.850 motion—that claim is also without merit for the same reasons discussed in this ground and in Subclaim 1 of Ground One.

nothing." Ex. C at 231. Because the jurors are presumed to have followed the court's instructions not to decide the case based on bias for or against any party—and because the law enforcement testimony was used by the defense to support the argument that no batteries occurred—no violation of due process has been shown by the fact that Juror D.C. served on the jury. Petitioner has not demonstrated entitlement to federal habeas relief under 28 U.S.C. § 2254(d). Accordingly, Ground Two should be denied.

## Ground Three

In his last claim, Petitioner contends that the prosecutor knowingly presented perjured testimony. ECF No. 10 at 8. Petitioner does not identify the witness in his claim in this court and contends that the constitutional claim was presented to the state court as part of his claim that trial counsel was ineffective in his cross-examination of the two victims with the police report. *See* ECF No. 26 at 3. The claim raised in his Rule 3.850 motion in the state court was solely one of ineffective assistance of trial counsel. Thus, the claim that the prosecutor knowingly presented perjured testimony is unexhausted and procedurally defaulted. Petitioner provides no basis to find that the procedural default should be excused.

Petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice. Tower, 7 F.3d at 210.

To demonstrate cause, Petitioner must show that an "external impediment" prevented him from raising the claim.  Alderman, 22 F.3d at 1551.  To obtain review of a procedurally defaulted claim without a showing of cause or prejudice, Petitioner must show a fundamental miscarriage of justice.  Henderson, 353 F.3d at 892.  To do so, he must show that a constitutional violation has occurred that "probably resulted in a conviction of one who is actually innocent," which is a stronger showing than is necessary to establish prejudice.  *See* Schlup, 513 U.S. at 327.  These showings have not been made.

Regardless of the procedural default, the claim is without merit and should be denied.  The Supreme Court held in Giglio v United States, 405 U.S. 150 (1972), that the government's presentation of perjured testimony or failure to correct false evidence violates due process.  *Id.* at 153-55.  To prevail on a Giglio claim, the defendant must establish that (1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony; and (2) that the falsehood was material.  United States v. Dickerson, 248 F.3d 1036, 1041 (11th Cir. 2001).

Perjury is defined as testimony given with the intent to provide false testimony.  United States v. McNair, 605 F.3d 1152, 1208 (11th Cir. 2010).

Petitioner contends that the victims presented perjured testimony because it differed from that set forth in the police report.  However, inconsistency of statements is not perjury, and not every inconsistent statement is material. United States v. Nelson, 970 F.2d 439, 442 (8th Cir. 1992).  Further, a challenge to evidence through prior inconsistent statements is insufficient to establish prosecutorial use of false testimony.  Hernandez v. State, 180 So. 3d 978, 994 (Fla. 2015) (citing United States v. Martin, 59 F.3d 767, 770 (8th Cir. 1995)).  The victims in this case both testified at trial that Petitioner touched them without their permission.  The testimony was consistent with much of the police report where Cattell reported that Petitioner pushed her in her face and Freeman reported that she saw Petitioner pushing Cattell.  Freeman is said to have reported to police that Petitioner pushed her to the ground where she landed on her stomach, as she testified at trial.  Any other possible inconsistences between the police report and trial testimony were not material to the elements of the offenses charged; and Petitioner alleges no facts to show that the prosecutor knowingly presented any false testimony.

Petitioner has failed to demonstrate any basis for relief under § 2254(d) and has failed to show that a constitutional violation occurred

resulting in a miscarriage of justice.  Accordingly, federal habeas relied on Ground Three should be denied.

## Conclusion

Based on the foregoing, Petitioner Rafie A. Lee is not entitled to federal habeas relief.  Accordingly, the amended § 2254 petition (ECF No. 10) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether

a certificate should issue." The parties shall make any argument as to whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied. *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

### Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the amended § 2254 petition (ECF No.10). It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on September 29, 2017.


**S/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed.**

R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.